IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| JACK HARNED, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-13-404-W |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|   Acting Commissioner of Social | ) | |
|    Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed an application for benefits on August 24, 2009. (TR 189). He alleged he was disabled beginning June 1, 2007, due to anxiety. (TR 167). Plaintiff has

1

a twelfth grade education and previously worked as an insurance salesperson, tool crib attendant, and telemarketer. (TR 47-48, 168-169, 198). At the time he filed his applications, Plaintiff was not taking any medications, and he had not seen a physician since "summer 2009." (TR 170-171). He stated he previously took prescribed anti-anxiety medication but "the doctor took me off it a year ago." (TR 172). Plaintiff stated that he was "legally blind" in his left eye. (TR 194, 199). Plaintiff was last insured for Title II benefits on March 31, 2009. (TR 182, 189).

There is a scant medical record reflecting that in July 2006 Plaintiff was seen by his treating physician, Dr. Spence, who noted Plaintiff was "thyrotoxic" and "hypokalemic" and also an "alcoholic [who] hasn't really been sober now for a long time." (TR 228). Dr. Spence suspected Plaintiff's abnormally low potassium level was "due to his alcohol intake." (TR 228). A physical examination revealed only normal findings. Nuclear medicine thyroid uptake and multiple scans conducted July 31, 2006, were interpreted by Dr. Griggs as showing "[a]bnormally low thyroid uptake." (TR 231).

In August 2006, Dr. Spence noted that Plaintiff was seen in follow up for his thyrotoxicosis. (TR 226). Physical examination findings were normal. The diagnostic assessment was thyrotoxicosis, and Dr. Spence noted Plaintiff was taking blood pressure medication and "doing much better with the symptoms on the medication." (TR 226).

In October 2007, Dr. Spence noted Plaintiff was seen due to his request for anti-anxiety medication. Dr. Spence noted he had "followed [Plaintiff] for [generalized anxiety disorder] for a number of years." (TR 224). The diagnostic assessment was generalized

2

anxiety disorder and "ETOH." (TR 224). Physical examination findings were normal. (TR 224-225). Dr. Spence prescribed anti-anxiety medication. Dr. Spence also noted Plaintiff's report that he was "actually doing better" because he had "cut down on his drinking." (TR 225). There are no further records of treatment of Plaintiff by Dr. Spence or another treating provider.

Plaintiff was evaluated for the agency by Dr. Rodgers, a psychologist, in September 2010. Dr. Rodgers reported that Plaintiff did not exhibit psychomotor agitation or retardation although his "leg was noticeably bouncing up and down during the interview." (TR 232). Plaintiff reported a history of anxiety "off and on" since adolescence, increased anxiety when in public places, and depression that had increased after his brother passed away six months previously. (TR 232).

Dr. Rodgers noted Plaintiff exhibited no thought or speech problems or symptoms of bipolar disorder, his intellectual functioning was estimated as average, and Plaintiff's report that he was unable to work due to anxiety. Plaintiff also reported drinking excessively on a daily basis and two prior arrests for driving under the influence. (TR 233).

A mental status examination was "unremarkable," and Plaintiff "evidenced the ability to tract the course and flow of the exam, concentrate, focus and display an adequate fund of knowledge." (TR 233). Dr. Rodgers noted Plaintiff was "functioning poorly on a psychological basis," that he had "mild" depression symptoms, that he did not have coping skills to manage his anxiety and used alcohol to cope, and that it "seems unlikely that Mr. Harned would be able to function in society at this time." (TR 233). The diagnostic

3

impression was panic disorder with agoraphobia, possible depressive disorder not otherwise specified, and possible alcohol dependence. (TR 233).

The record also contains a mental residual functional capacity ("RFC") assessment completed by a state agency medical consultant, Dr. Millican-Wynn, Ph. D., dated October 28, 2010 (TR 235-237), a psychiatric review technique ("PRT") form completed by Dr. Millican-Wynn on October 28, 2010, for the time period between August 24, 2009 and October 12, 2010 (TR 239-252), a PRT form completed by Dr. Millican-Wynn on October 28, 2010, for the time period between June 1, 2007 and March 31, 2009 (TR 253-265), and a written statement by a second state agency medical consultant, Dr. Holloway, Ph. D., dated April 21, 2011, affirming Dr. Millican-Wynn's assessments. (TR 267).

At a hearing conducted on December 20, 2011, before the ALJ, Plaintiff testified that he spent most of his time "alone" although he lived at a homeless shelter where he performed chores such as taking out trash. (TR 34). Plaintiff testified he could not be around "any crowds at all" and experienced "attacks" and that he quit working in 2007 because he "couldn't really handle it that much" and the business ended. (TR 36-37). Plaintiff stated he was not taking any prescribed medication and that his doctor had refused to continue prescribing his previous anti-anxiety medication, although Plaintiff did not provide a reason for this medical decision. Plaintiff stated that he stopped drinking alcohol "a year ago" and that he had panic attacks lasting for "a few minutes" or longer. To manage the attacks, Plaintiff stated he went to a room by himself to lie down. (TR 44-46). A vocational expert ("VE") also testified at the hearing.

4

II. ALJ's Decision

In a decision entered January 27, 2012, Administrative Law Judge Gordon ("ALJ") found that Plaintiff met the Social Security Act's insured status requirements through March 31, 2009. (TR 20). Following the agency's requisite sequential evaluation procedure, the ALJ found at step two that Plaintiff had not engaged in substantial gainful activity since June 1, 2007, the date on which he alleged his disability began. (TR 20). The ALJ also found at step two that Plaintiff had a severe impairment due to panic disorder with agoraphobia. (TR 20).

At step three, the ALJ found that Plaintiff's impairment was not *per se* disabling under the agency's Listing of Impairments. (TR 20). In connection with the step three finding, the ALJ considered the requirements of Listing 12.06 for anxiety-related disorders. The ALJ found that Plaintiff had "mild" functional limitations in activities of daily living, "moderate" difficulties in social functioning, "mild" difficulties in maintaining concentration, persistence, or pace, and "no" episodes of extended periods of decompensation. (TR 21).

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels[1] limited to the performance of simple and some complex tasks and no interaction with the general public. (TR 21). Relying on the VE's testimony at the hearing, the ALJ found at step five that Plaintiff could not perform his previous jobs given this RFC for work but that he could perform other jobs available in the

---

[1] Plaintiff does not challenge the finding that he has no exertional limitations.

economy, including the jobs of automobile detailer, hand packager, and motel cleaner. (TR 25-26). The Appeals Council declined to review this decision, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

III. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The agency determined that Plaintiff's insured status for the purpose of disability insurance benefits expired on March 31, 2009. Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that he was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on March 31, 2009. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir.

6

1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

IV. ALJ's Analysis of Consultative Examiner's Report

Plaintiff first contends that the ALJ "Cherry Picked Dr. Rodgers' Report." Plaintiff's Opening Brief, at 3. As Plaintiff points out, the Tenth Circuit has recognized that an "ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only those parts favorable to a finding of nondisability," without explaining his or her reasoning. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). Plaintiff, however, misreads Dr. Rodgers' report when he argues that Dr. Rodgers made an "ultimate conclusion that [Plaintiff] cannot function in society." Plaintiff's Opening Brief, at 3.

In the report of her psychological examination of Plaintiff, Dr. Rodgers set forth her findings concerning a mental status examination and a summary of Plaintiff's statements concerning his symptoms and daily activities. Dr. Rodgers noted that a mental status examination was "unremarkable" and that Plaintiff exhibited no abnormal thought or speech and a good ability to concentrate and exercise good social judgment. (TR 233). Dr. Rodgers stated that Plaintiff, however, was "functioning poorly on a psychological basis" because he lacked adequate coping skills "to manage his anxiety and thus he is using alcohol to cope." (TR 233). Dr. Rodgers stated it "seem[ed] unlikely that [Plaintiff] would be able to function in society at this time." (TR 233).

When an ALJ considers the opinion of a disability claimant's treating physician, the ALJ must follow a specific procedure in analyzing the medical opinion. Generally, an ALJ

7

must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). Where an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide "whether the opinion should be rejected altogether or assigned some lesser weight." Pisciotta v. Astrue, 500 F.3d 1074, 1077 (10th Cir. 2007). "Treating source medical opinions not entitled to controlling weight 'are still entitled to deference' and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927." Newbold v. Colvin, __ F.3d. __, 2013 WL 2631530, * 5 (10th Cir. 2013)(quoting Watkins, 350 F.3d at 1300).

The agency defines medical opinions as "statements from . . . acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s) and [the claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2), 416.927(a)(2).

Dr. Rodgers' brief comment in her report that it was "unlikely" Plaintiff could "function in society at this time" was not an opinion because it did not provide a judgment about Plaintiff's functional abilities. See Cowan v. Astrue, 552 F.3d 1182, 1189 (10th Cir. 2008)(physician's "brief statement" on medical form that "the doctor did not know if Mr. Cowan would be able to return to work" was not "true medical opinion" because it did not

8

contain physician's "judgment about the nature and severity of [claimant's] physical limitations, or any information about what activities [claimant] could still perform"); Sullivan v. Colvin, 519 Fed. Appx. 985, 988 (10th Cir. 2013)(unpublished op.)(holding doctor's statement that claimant might have difficulty working in majority of competitive environments and should locate work in highly structured and supportive setting was not "true medical opinion" about nature and severity of claimant's mental impairment).

Even if the statement could be considered a medical opinion, the context in which the opinion was made reflects that Dr. Rodgers was assessing Plaintiff's ability to function as a result of both Plaintiff's mental impairment and his admittedly excessive substance abuse. The opinion did not differentiate between the two, and as a result it offered no true medical opinion of functional limitations stemming from Plaintiff's mental impairment. Further, the opinion addressed an issue reserved to the Commissioner. See 20 C.F.R. § 404.1527(e), 416.927(e).

The ALJ did not ignore Dr. Rodgers' report. Rather, the ALJ's decision includes a thorough description of Dr. Rodgers' report, including Dr. Rodgers' objective medical findings from her mental status examination of Plaintiff and her statement that Plaintiff was "unlikely" to be able to function in society "at this time." The ALJ also considered and adopted the RFC assessment by the agency's medical consultant, Dr. Millican-Wynn, reasoning that Dr. Millican-Wynn had considered Dr. Rodgers' objective findings in assessing Plaintiff's RFC for work. Accordingly, no error occurred with respect to the ALJ's consideration of Dr. Rodgers' report and Dr. Rodgers' brief comment in the report that it was

"unlikely" Plaintiff "would be able to function in society at this time."

V. Step Four RFC and Credibility Findings

Plaintiff asserts that the ALJ's RFC finding is not supported by substantial evidence because the RFC finding does not include functional limitations caused by his mental impairment. At the fourth step of the evaluation process, the ALJ must determine whether the claimant retains the RFC to perform the requirements of all past relevant work. RFC represents "the most [that the claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Plaintiff misreads the RFC finding which included specific limitations in the Plaintiff's ability to perform work-related functions directly attributable to Plaintiff's mental impairment. The ALJ found that Plaintiff's ability to work was limited by "the following non-exertional limitations: he can perform simple and some complex tasks; and he can have no interact[ion] with the general public." (TR 21). This RFC finding tracks the PRT and RFC assessments by the agency's medical consultant, Dr. Millican-Wynn. Dr. Holloway, Ph.D., affirmed Dr. Millican-Wynn's assessments. Dr. Millican-Wynn's assessments, which are not contradicted by other evidence in the record and are supported by the objective medical findings made by the consultative examiner, Dr. Rodgers, and by Dr. Holloway's affirmation, provide substantial evidence to support the RFC finding.

Plaintiff contends that the ALJ's credibility finding was faulty because the credibility finding was not linked to "proper" evidence in the record and because the ALJ "apparently judged the credibility of the claimant's testimony by comparing it to a pre-determined RFC."

Plaintiff's Opening Brief, at 6, 7 (footnote omitted).

In the ALJ's decision, the ALJ made the following general statement addressing Plaintiff's credibility:

> After careful consideration of the evidence, the [ALJ] finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment.

(TR 23). If the ALJ had stopped with this statement and failed to address the medical and non-medical evidence in the record with respect to the credibility issue, the Plaintiff's argument would have merit. Cf. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004)(ALJ's use of "boilerplate language" in assessing credibility is insufficient to support credibility determination but only when it appears "in the absence of a more thorough analysis").

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about [his] symptom(s) and [their] functional effects." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). But an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in determining a claimant's credibility. SSR 96-7p, 1996 WL

11

374186, at * 4 (1996).

Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted). Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012).

In this case, the ALJ set forth a generous and thorough explanation in the decision, tied to specific evidence in the record, to support the credibility determination. See SSR 96-7p, 1996 WL 374186, at *3 (discussing factors to be considered in credibility determination); Hamlin v. Barnhart, 365 F.3d 1208, 1220 (10th Cir. 2004)(stating ALJs "should consider" factors set forth in SSR 96-7p); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). See also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)(listing factors relevant to symptoms that may be considered by ALJ). The ALJ relied on Dr. Rodgers' objective medical findings in the mental status examination, the assessment of Dr. Millican-Wynn based on the psychologist's review of the record, and the fact that Plaintiff was not taking psychotropic medications or undergoing mental health treatment throughout most of the time he alleged he was disabled. (TR 23-24). The ALJ's credibility finding is well supported by the evidence, and the ALJ did not err in conducting the necessary credibility analysis.

The VE's testimony describing the availability of jobs for an individual with Plaintiff's RFC for work provides substantial evidence to support the ALJ's step five finding

of nondisability. Therefore, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before January 13th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 23rd day of December, 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE